**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sergio Bailey, | No. CV-19-01761-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| P.B. Bell Asset Management Incorporated | |
| Defendants. | |

Pending before the Court is Defendant, P.B. Bell Asset Management Incorporated's, Motion for Summary Judgement. (Doc. 51.) Plaintiff, Sergio Bailey, has responded and Defendant replied. (Docs. 56, 58.) Oral argument was heard in this matter on October 26, 2020. Having considered both parties' arguments, the Court will grant Defendant's motion as it pertains to Plaintiff's claim of a sex-based hostile work environment and Plaintiff's two state AEPA claims. The Court will deny Defendant's motion as it pertains to Plaintiff's race-based hostile work environment claim and claim for retaliation.

## I.   FACTUAL OVERVIEW

This case arises from the employment relationship between the Plaintiff Sergio Bailey ("Mr. Bailey") and his former employer P.B. Bell Asset Management Incorporated ("P.B. Bell"). Mr. Bailey began working as a maintenance technician for P. B. Bell in July 2013. (Doc. 56-1 at 3.) By September 2017, he was promoted to the maintenance supervisor at "Via 21," one of Defendant's properties, where he oversaw the maintenance of Via 21's apartments, grounds, and pool and spa facilities. (*Id.*) In June of 2017, several

months before Plaintiff's promotion occurred, Mehradad Rahimzadeh took over as property manager of Via 21. (*Id*.) Mr. Rahimzadeh's arrival is relevant because he and the Plaintiff appear to have been at odds for much of the Plaintiff's remaining tenure. Plaintiff's claims of a hostile work environment all center around alleged sexual or racist comments made by Mr. Rahimzadeh. (Doc. 10 at 2-4.) Similarly, Plaintiff's claims for retaliation and wrongful termination rest on the assertion that the company took actions against him for turning in Mr. Rahimzadeh to HR.

According to Mr. Bailey, his employment with P.B. Bell prior to Mr. Rahimzadeh's arrival was uniformly satisfactory. (Doc. 52-1. at 33-34.) However, Plaintiff began to have issues after Mr. Rahimzadeh took over. Plaintiff alleges that Mr. Rahimzadeh made numerous racist comments toward him including calling the Plaintiff a "nigga," and referring to Plaintiff as a "monkey" or "boy." (Doc. 52-1 at 36-38, 46; Doc. 57-1 at 101.) While the parties dispute the actual frequency of these comments, Plaintiff in his deposition states that Mr. Rahimzadeh used the specific phrase "what's up my nigga…more than five times." (*Id*. at 37.) This was in addition to using the phrase "that's my nigga" on multiple other occasions. (*Id.* at 38.) Additionally, Plaintiff alleges that Mr. Rahimzadeh made numerous sexual comments regarding the residents of Via 21 to the Plaintiff. This included talking to the Plaintiff about how he wanted one of the residents to "wear a thong" and talking about "[a resident] putting hotdogs in her vagina" as well as taking actions such as standing behind a resident and pretending to "hump" her while her back was turned. (Doc. 52-1. at 49-55; Doc. 57-1. at 8-10.)

Plaintiff asserts that he and Erminia Spinelli (Ms. Spinelli), a resident of Via 21, at different times brought Mr. Rahimzadeh's behavior to the attention of his immediate supervisor, Amy Campbell, with little to no resulting effect. Ms. Spinelle even filed a police report against Mr. Rahimzadeh for his sexual harassment in which she stated she had attempted to contact Amy Campbell and P.B. Bell management about the behavior to no avail. (Doc. 57-1 at 205-225.) Mr. Bailey not only informed Amy Campbell, but also warned some female residents of Via 21 about Mr. Rahimzadeh's sexual comments. (*Id*.)

This resulted in Mr. Rahimzadeh accusing the Plaintiff of being "a snitch." (*Id*.) Shortly after this, the Plaintiff states that Ms. Spinelli informed him that Mr. Rahimzadeh "offered her a thousand dollars to help get this nigga fired." (*Id*. at 13; 106-107.) Ms. Spinelli testifies the same in her deposition and claims Mr. Rahimzadeh told her he was trying to get the Plaintiff fired on multiple occasions. (*Id*. at 113.) Plaintiff also alleges that Mr. Rahimzadeh actively attempted to get him fired and set him up to be terminated both by "sabotaging" the Plaintiff's performance, and by attempting to make it look like the Plaintiff was stealing. (Doc. 52-1 at 44; Doc. 57-1 at 23-25, 125.) Ms. Spinelli collaborates Plaintiff's claims, alleging that Mr. Rahimzadeh would wait for the Plaintiff to leave and then put chemicals in the pool and mess with the pool chemical logs. (*Id.* at 108-10.) She also stated that Mr. Rahimzadeh "told [her] his goal is to make it look like a health and safety violation because then [Plaintiff] is out, he's done…" (*Id*. at 109.)

Mr. Bailey's issues with his work came to a head during the spring and summer of 2018. In April of 2018, the Maricopa County Health Department closed Via 21's pool and spa, a facility that was under the Plaintiff's supervision. (Doc. 56-1 at 4; Doc. 52-1 at 41.) Issues surrounding the pool continued, and over the summer the spa's heater and motor had to be replaced due to "poor maintenance and lack of chemical upkeep." (Doc. 52-1 at 41.) This resulted in the Plaintiff receiving a writeup from P.B. Bell over his allegedly poor maintenance of the pool and being placed on a "Performance Improvement Plan." (*Id*. at 42.) While Plaintiff signed the writeup after being told to do so, his deposition and affidavit deny any actual responsibility for the state of the pool. (*Id*. at 44.) He alleges, and the deposition of Ms. Spinelli collaborates, that Mr. Rahimzadeh was messing with the chemicals and logs of the pool and spa in order to undermine the Plaintiff's work. (*Id*. at 108-13.)

On August 7, 2018 Mr. Bailey appeared at P.B. Bell's corporate office carrying a backpack and a computer monitor and wearing sunglasses. (*Id*. at 65.) According to the Plaintiff, the monitor was the former property of P.B. Bell that had been given to him by Mr. Rahimzadeh. (*Id*. at 61-63.) He was prompted to bring it in because he believed Mr.

Rahimzadeh was stealing other items delivered to residents and setting the Plaintiff up to take the fall. (*Id*.; Doc. 57-1 at 23.) The Plaintiff stated his past reporting of Mr. Rahimzadeh and the non-action of Amy Campbell and the human resources department led him to seek out his former supervisor, Conrad Drewanz, who had moved to another corporate position. (Doc. 52-1 at 62). Plaintiff admitted that while he was explaining everything to Mr. Drewanz, he was emotional, upset, and agitated, even to the point of tearing up. (*Id*. at 65-66.) Plaintiff also admitted to raising his voice and that he did not sit down during the interview. (*Id*. at 67-68.)

Mr. Drewanz and the Plaintiff eventually met with other members of P.B. Bell's corporate staff, including Amy Campbell, and a human resources representative named Erin O'Clair. (*Id*. at 74.) Plaintiff admits that during the interview he told Ms. O'Clair that "you probably think I'm on drugs" and "you probably think I'm crazy" as he relayed his allegations. (*Id*. at 78.) According to the Plaintiff, after this meeting Ms. O'Clair told him they would investigate his allegations and told him to go home. (*Id*. at 76.) He then left the corporate building and continued to talk to Conrad outside before finally leaving to go to the hospital.[1] (*Id*.) While this point is hotly disputed, several of the Defendant's employees assert that Erin O'Clair came up to the Plaintiff outside of the office and asked him to take a drug test. Plaintiff asserts in his deposition that he was never asked to take a drug test while at the corporate office. (57-1 at 33.) However, this assertion seemingly contradicts admissions made by the Plaintiff both in his amended complaint and in his trial management report where he claimed to have been "wrongfully subjected to a drug test." (Doc. 10 at 7; Doc. 18 at 3.) Plaintiff was fired on the same day shortly after the meeting for refusing to take a drug test. The Defendant offers no evidence of if anyone double checked whether Plaintiff had gone to take the drug test prior to his termination.

The Plaintiff filed a charge with the EEOC on November 19, 2018, alleging that he had been the victim of race-based discrimination and retaliation. (Doc. 52-1 at 190.) The

---

[1] Plaintiff had been suffering stomach pain that day which he claims is why he did not sit down in Conrad's office.

- 4 -

EEOC Charge alleged "during [Plaintiff's] employment Nick Rahimzadeh (manager) would make race [sic] comments to [him]." The charge further alleged that "on or around August 7, 2018, [Plaintiff] reported…that Mr. Rahimzadeh was selling stolen items on Offer up App [sic] and using race based comments" and that "as a result Plaintiff was terminated from his position." (*Id*.) The EEOC dismissed his charge and issued the Plaintiff a Notice of Right to Sue on December 19, 2018. (*Id*. at 192.) Plaintiff retained counsel after receiving the EEOC notice, and his counsel wrote to the EEOC on January 16, 2019 requesting they reconsider the charge. (Doc. 57-1 at 191.) This letter was the first time Plaintiff asked the EEOC to consider Mr. Rahimzadeh's sexually offensive conduct. (*Id*.) The EEOC declined to reconsider the charge, and Plaintiff exercised his right to sue. Plaintiff filed his First Amended Complaint with this Court on June 11, 2019. (Doc. 10). Plaintiff's First Amended Complaint alleges claims under Title VII for a sex-based hostile work environment, a race-based hostile work environment, and retaliation, as well as two claims under state law for wrongful termination.

After the conclusion of discovery, Defendant filed this Motion for Summary Judgement, (Doc. 51.), asserting it was entitled to summary judgment on all Plaintiff's claims. Defendant argued the sex-based hostile work environment claim failed because, among other reasons, Plaintiff had not exhausted his administrative remedies. (*Id*. at 6-9.) Defendant argued Plaintiff's race-based hostile work environment claim failed because Mr. Rahimzadeh's racial comments were not "sufficiently severe or pervasive enough" and did not affect Plaintiff's work performance. (*Id*. at 9-11.) Defendant argued Plaintiff's retaliation claim failed because Plaintiff has not shown a causal link between his complaints and his termination, and even if he had, Defendant had a legitimate nonretaliatory motive for terminating him after Plaintiff refused a drug test. (*Id*. 11-14.) Finally, Defendant argued Plaintiff's claims for wrongful termination under Arizona law must fail because Plaintiff has abandoned those claims by failing to address them on summary judgment. (*Id*. 14-16.)

**II.     Standard of Review**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986). A "material fact" is any factual issue that might affect the outcome of the case under the governing substantive law. *Liberty Lobby, Inc.*, 477 U.S. at 248. A dispute of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id*. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). The court need only consider the cited materials, but it may also consider any other materials in the record. Fed. R. Civ. P. 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Initially, the movant bears the burden of demonstrating, via citations to the record, a lack of any dispute. Fed. R. Civ. P. 56(c)(1)(A), (B). If the movant fails to satisfy this burden, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden shifts to the nonmovant to establish the existence of a disputed material fact. *Id*. at 1103. The nonmovant need not establish the issue of fact conclusively, but "must do more than simply show that there is some metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Liberty Lobby*, 477 U.S. at 247–48 (holding bare assertions alone are insufficient to create an issue of fact). In the summary judgment context, the Court believes the nonmovant's evidence, *Liberty Lobby*, 477 U.S. at 255, and construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper,

and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

The District of Arizona has recently noted, "general principles of summary judgment practice apply with equal force in the employment discrimination context, but since intent is often disputed in such cases, courts treat summary judgment motions in employment discrimination cases with some caution." *Hogan v. Henderson*, 102 F.Supp.2d 1180, 1183 (D. Ariz. 2020) (citing *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991) (superseded by statute on other grounds)). However, summary judgment may be appropriate when the plaintiff does nothing more than present conclusory allegations. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994) (finding summary judgment appropriate, even with a "bare prima facie case," where evidence to refute defendant's legitimate explanation was "totally lacking").

### III.  Analysis

#### A.  Sex-Based Hostile Work Environment Claim

The Plaintiff's sex-based claim cannot survive summary judgement because he has failed to exhaust his administrative remedies prior to bringing the claim. Plaintiff argues that the sex-based claim is within the scope of his original charge, or in the alternative that his letter to the EEOC cured any deficiency. However, to agree with Plaintiff's argument both ignores controlling Ninth Circuit precedent and undermines the purposes of requiring exhaustion of administrative remedies.

##### i.  *The Scope of the EEOC Charge*

The Plaintiff's sex-based hostile work environment claim is not within the scope of his EEOC charge. In Title VII cases, the jurisdictional scope of this Court's actions "depends upon the scope of both the EEOC charge and the EEOC investigation." *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990). Prior to suing under Title VII, a plaintiff must exhaust their administrative remedies by filing a timely charge with the EEOC or appropriate state agency. *Villa v. Arizona*, 2019 U.S. Dist. LEXIS 69940, 20 (D. Ariz. April 25, 2019) (citing *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002)).

Judicial relief is available for claims made in the EEOC charge and those "like or reasonably related to the allegations of the EEOC charge." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) The crucial element in determining the scope of a charge "is the factual statement contained therein." *B.K.B.*, 276 F.3d at 1100 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970)). A plaintiff's claim is reasonably related to an EEOC charge to the extent it is "consistent with the plaintiff's original *theory* of the case." *Arizona. ex rel. Horne v. Geo Group, Inc.*, 816 F.3d 1189, 1205 (9th Cir. 2016) (emphasis added).

In determining the scope of a complaint, the Court has an obligation to "construe…EEOC charges with upmost liberality." *Freeman*, 291 F.3d at 636. However, "there is a difference between liberally reading a claim which 'lacks specificity,' and inventing, *ex nihilo*, a claim which simply was not made." *Padilla v. Bechtel Constr. Co.*, No. CV-06-286-PHX-LOA, 2007 U.S. Dist. LEXIS 30835 *18 (D. Ariz. Apr. 25, 2007) (citing *B.K.B.*, 276 F.3d at 1100); see also *Freeman* 291 F.3d at 636 ("we construe the language of EEOC charges with utmost liberality…[but] there is a limit to such judicial tolerance when principles of notice and fair play are involved."). Thus, new theories of discrimination appearing for the first time in a complaint, are considered outside the scope of a previous EEOC charge even if based on the same factual occurrences. *Shah v. Mt. Zion Hospital & Medical Center*, 642 F.2d 268, 272 (9th Cir. 1981) (holding a plaintiff's newly raised race, color, and religion claims were outside the scope of an EEOC complaint even when based on the same actions of the employer because the "theories [were] never investigated by the EEOC."); *see also Devereaux v. E. Bay Conservation Corp.*, No. C 97-3065 SI, 1998 U.S. Dist. LEXIS 20435 (N.D. Cal. Dec. 29, 1998) ("the administrative charge alleging age discrimination contained no direct or indirect reference to sex or race discrimination.").

Though admitting that his charge filed with the EEOC does not list any details or claims of sex discrimination, Plaintiff argues the Court should find this claim is "within the scope" of the EEOC charge because of all the common or overlapping factual

circumstances. Plaintiff points to the Court's obligation to "construe…EEOC charges with upmost liberality" in support of his position. However, the Ninth Circuit has considered Plaintiff's exact argument and rejected it on a previous occasion. *Shah*, 642 F.2d at 271-72.  In *Shah v. Mt. Zion Hospital & Medical Center* the Ninth Circuit upheld the dismissal of title VII claims based on race, color, and religion due to Shah's failure to exhaust his administrative remedies. *Id*. The court distinguished circumstances where "a chain of discriminatory acts *all aris[e] under the common theory*" from Shah's attempt to use "the same employer actions to demonstrate discrimination under *three theories never investigated by the EEOC*." *Id*. (emphasis added). The court found that because Shah was asserting new theories, the claims were not within the scope of his EEOC complaint and were properly dismissed. *Id*. Given this ruling by the Ninth Circuit, the Court finds that Plaintiff's assertion of new theories of discrimination is outside the scope of Plaintiff's original EEOC complaint.

   ii. <u>*Plaintiff's Letter Requesting Reconsideration*</u>

  Plaintiff's letter sent after the close of the EEOC investigation does not cure his failure to exhaust administrative remedies. Plaintiff argues even if his sex-based claim is outside the scope of his original charge, he corrected any deficiency by sending a letter to the EEOC requesting them to reopen his case. The letter in question was sent almost a month after the EEOC finished their investigation. There, for the first time, Plaintiff informed the EEOC of alleged sexual conduct by Mr. Rahimzadeh. Such a late and halfhearted attempt does not adequately exhaust Plaintiff's remedies.

  Requiring a plaintiff to file an EEOC charge prior to suing "serves the important purposes of giving the charged party notice of the claim and 'narrowing the issues for prompt adjudication and decision.'" *B.K.B.*, 276 F.2d at 1099 (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)). Similarly, the EEOC's investigative and conciliatory roles hinge upon Plaintiffs asserting their claims in that venue. *Id*. at 1099 (citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985) ("Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would

circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice…")). When considering the goals and purposes of this administrative remedy, it is important to note that "only the [EEOC] charge is sent to the respondent." *B.K.B.* 276 F.3d at 1102; *see also Freeman* 291 F.3d at 636 ("there is a limit to such judicial tolerance when principles of notice and fair play are involved.")

Considering these goals, it is unclear how Plaintiff's letter could be considered adequate exhaustion of his administrative remedies. A letter sent after the close of an investigation cannot "narrow issues for prompt adjudication" nor will it allow the EEOC to accomplish "conciliatory role" between employer and employee. It is also unclear how a letter sent after the investigation is closed can provide any notice to P.B. Bell of the claim. Allowing plaintiffs to exhaust their remedies so easily completely undercuts the administrative agency's function as a gatekeeper, investigator, and conciliator. Plaintiff has not cited any case in which this or any other court has upheld the exhaustion of remedies based on new allegations first appearing in a plaintiff's letter requesting reconsideration.

The sole citation Plaintiff makes in arguing otherwise is to *Fed. Express Corp. v. Howlowecki*, 552 U.S. 389, 406 (2008)[2]. In doing so Plaintiff rests his entire argument on the Supreme Court's statement that "Documents filed by an employee with the EEOC should be construed, *to the extent consistent with permissible rules of interpretation*, to protect the employee's rights and statutory remedies." 552 U.S. at 406 (emphasis added). Even though Plaintiff cites *Howlowecki* for this general point, the facts of that case are inapposite to Plaintiff's present circumstances. *Howlowecki* examined whether an affidavit attached to the *initial EEOC complaint* could be considered part of the complaint itself for the purpose of exhausting remedies. But Plaintiff is not asking the Court to include claims

---

[2] In analyzing *Howlowecki*, the Court will assume Plaintiff has verified that none of the differences between the ADEA and Title VII are relevant to the analysis. *See Howlowecki*, at 393 ("As a cautionary preface, we note that the EEOC enforcement mechanisms and statutory waiting periods for ADEA claims differ in some respects from…Title VII of the Civil Rights Act and the [ADA]. While there may be areas of common definition, employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.")

or facts that were provided for the EEOC's investigation alongside his initial charge. Plaintiff is asking the Court to include claims that were never provided to the EEOC until after the charge was investigated and closed. Doing so completely undercuts the goals of administrative adjudication. As such the Court finds that Plaintiff's letter did not effectively exhaust his administrative remedies.

For the above reasons, Defendant's Motion for Summary Judgement on Plaintiff's sex-based hostile work environment claim is granted.

### B. Race-Based Hostile Work Environment Claim

The Plaintiff's evidence regarding his race-based hostile work environment claim is adequate to survive summary judgement. Defendant argues this claim fails because the racial conduct is not "sufficiently severe or pervasive." However, this assertion rests on a dubious reading of the evidence that ignores the Court's obligation to believe the nonmovant's evidence, *Liberty Lobby*, 477 U.S. at 255, and construe disputed facts in the light most favorable to the non-moving party. *Ellison*, 357 F.3d at 1075.

To establish a hostile work environment claim, Plaintiff must show (1) he was subjected to verbal or physical conduct because of his race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive enough to alter the conditions of Plaintiff's employment and create an abusive work environment. *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 686 (9th Cir. 2017). In assessing whether a work environment is sufficiently hostile, the Court examines the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Reynaga*, 847 F.3d at 687 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Id*. (quoting *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (internal quotation marks and citation omitted)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not create an actionable claim under Title VII, but the harassment need not be

so severe as to cause diagnosed psychological injury. *Id.* (quoting *Faragher*, 524 U.S. at 788). It is enough "if such hostile conduct pollutes the victim's workplace, making it more difficult for [him] to do [his] job, to take pride in [his] work, and to desire to stay in [his] position." *Id.* (quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994)). The hostility need not be directly targeted at the plaintiff to be relevant to his or her hostile work environment claim. *Id.* (citing *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1117 (9th Cir. 2004)). The plaintiff must show that the work environment was both subjectively and objectively hostile. *Nichols*, 256 F.3d at 871-72. The Ninth Circuit has referred to the word "Nigger" as "perhaps the most offensive and inflammatory racial slur in English." *McGinest*, 360 F.3d at 1116.

Defendant argues that Mr. Rahimzadeh's conduct was not sufficiently severe because Mr. Rahimzadeh "only" called Plaintiff a "nigga" approximately five times, called him a "monkey" three times, and referred to him as "boy" at times. Defendant further argues this is not pervasive given the eleven-month period Plaintiff worked with Mr. Rahimzadeh. However, Defendant's analysis of the evidence ignores the Court's obligation to draw inferences in favor of the Plaintiff. Mr. Bailey did not testify that Mr. Rahimzadeh "only" called him a "nigga" five times. Mr. Bailey testified that Mr. Rahimzadeh used the specific phrase "what up my nigga?" on *at least* on five separate occasions. (Doc. 52-1. at 37.) These five occasions were not alone; later in his deposition Mr. Bailey states Mr. Rahimzadeh *also* used the phrase "that's my nigga" an untracked amount of times. (*Id.* at 38.) This is in addition to being referred to by Mr. Rahimzadeh as "boy" on multiple occasions as well as being called a monkey several times. The Supreme Court has previously stated that referring to someone as "boy" is potential evidence of racial animus. *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006).

Even if the Court were to ignore every other comment by Mr. Rahimzadeh, Plaintiff would still have adequately stated a claim for a race-based hostile work environment. Ms. Spinelle is on record stating Mr. Rahimzadeh "offered her a thousand dollars to *help get this nigga fired*." (Doc. 57-1 at 13, 106-107.) She also testified that she saw Mr.

Rahimzadeh put chemicals in the pool and tamper with the pool chemical log after waiting for the Plaintiff to leave work. (*Id.* at 108-10.) According to Ms. Spenelli, Mr. Rahimzadeh "told [her] his goal is to make it look like a health and safety violation because then [Plaintiff] is out, he's done…" (*Id.* at 109.) Mr. Rahimzadeh said he wanted to "get this nigga fired" and was then seen tampering with Plaintiff's workplace responsibilities to, by his own admission, "make it look like a health and safety violation because then [plaintiff] is…done." Even disregarding all the other comments, these facts alone would support a jury in finding the Plaintiff was subjected to unwelcome conduct based on his race that effected his work environment.

For the above reasons, Defendant's Motion for Summary Judgement on Plaintiff's race-based hostile work environment claim is denied.

### C. Plaintiff's Retaliation Claim[3]

Plaintiff has stated a *prima facie* case for retaliation by the Defendant and has presented evidence sufficient to survive summary judgment. Defendant's argument of the denied drug test as a legitimate non-retaliatory reason for Plaintiff's termination does not prevent Plaintiff from meeting their burden of production.

To establish a *prima facie* case of retaliation the Plaintiff must show (1) they engaged in a protected activity, (2) they suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse action. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). Establishing his *prima facie* case creates a rebuttable Thayer presumption in Plaintiff's favor that retaliation has occurred. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 n.7 (1981) ("[a] 'prima

---

[3] In evaluating this claim the Court has limited itself to the arguments made by the parties. Plaintiff has elected to pursue retaliation based only on his termination and has not presented any argument of retaliation based the alleged sabotage and write up by Mr. Rahimzadeh after his referring to Plaintiff as a "snitch." *See Ray v. Henderson*, 217 F.3d 1234, 1242 (9th Cir. 2000) ("adverse employment action…[means] any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity."); *Robinson v. Cty. of San Joaquin*, 693 Fed. Appx. 653, 654 (9th Cir. 2017) ("undeserved performance ratings can constitute adverse employment actions").

facie case'…denote[s] the establishment of a legally mandatory, rebuttable presumption"). The employer must rebut this presumption by articulating a legitimate, non-retaliatory explanation for the adverse employment action. *Burdine* 450 U.S. at 254-55; *see also Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001) (citing *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1997)). If Defendant rebuts the presumption with a non-retaliatory basis then Plaintiff has the burden of showing the offered basis is pretextual. *Manatt v. Bank of Am.*, 339 F.3d 792, 800 (9th Cir. 2003).

The parties do not dispute that the Plaintiff's reporting of Mr. Rahimzadeh's behavior was a protected activity, nor that his firing was an adverse employment action. Defendant instead argues that Mr. Bailey's refusal to submit to a drug test severs any causal link between the protected activity and his termination. Defendant further argues that even if Plaintiff did succeed in showing a *prima facie* case, Defendant has shown a non-retaliatory motive which defeats Plaintiff's evidence.

### i. Causation in Plaintiff's Prima Facie Case

The temporal proximity between Plaintiff's reporting of Mr. Rahimzadeh and Plaintiff's termination supports the inference of causation. "[R]etaliation claims must be proved according to traditional principles of but-for causation." *Bagley v. Bel-Aire Mech. Inc.*, 647 Fed. Appx. 797, 800 (9th Cir. 2016) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)). Additionally, the Court "construe[s] the causal link element of the retaliation framework 'broadly;' a plaintiff 'merely has to prove that the protected activity and the [adverse] action are not completely unrelated.'" *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 868 (9th Cir. 2014). The Ninth Circuit has held on multiple occasions that temporal proximity alone is enough circumstantial evidence of causation when the defendant had knowledge of the protected activity. *Flores v. City of Westminster*, 873 F.3d 739, 749-50 (9th Cir. 2017); *see also Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003) ("three to eight months is easily within the time range that supports an inference of retaliation" and "whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the

1 timing and the surrounding circumstances."). Thus "when adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred." *Shahrivar v. City of San Jose*, 752 Fed. Appx. 415, 419 (9th Cir. 2018). Given these cases, it seems rather clear that Plaintiff's evidence of being terminated the same day he reported Mr. Rahimzadeh is sufficient circumstantial evidence of causation to prove his *prima facie* case.

Defendant's arguments to the contrary are unpersuasive. Defendant first argues that presenting a non-retaliatory basis not only defeats the presumption created by Plaintiff's *prima facie* case, but somehow prevents Plaintiff from establishing their *prima facie* case in the first place. This contention does not accurately reflect Defendant's burden of proof. Once Plaintiff established a *prima facie* case of retaliation, it was incumbent upon the Defendant to present a non-retaliatory basis for their action. Had it failed to do so Plaintiff's case would have been conclusively proved. *Burdine*, 450 U.S. at 255, n.7 ("[a] 'prima facie case'…denote[s] the establishment of a legally mandatory, rebuttable presumption"). Thus, by presenting a non-retaliatory basis, Defendant defeated the mandatory presumption in Plaintiff's favor *Id*. at n. 10. However, presenting this alternative basis for termination does not prevent Plaintiff's use of temporal proximity to show his *prima facie* case. *Id*.

Defendant next argues that even if temporal proximity can sometimes support the inference of causation to prove a plaintiff's prima *facie* case, the inference was not merited here. In support of this assertion Defendant cited a string of district court cases. One of the cases cited flatly contradicts Defendant's contention, *Yount v. Regent Univ., Inc.*, No. CV-08-8011-PCT-DGC, 2009 U.S. Dist. LEXIS 32846, *21-26 (D. Ariz. Apr. 13, 2009) (finding temporal proximity was sufficient to show "causation" for a *prima facie* case), and the remainder are easily distinguishable. *Davenport v. Bd. of Trs. of the State Ctr. Cmty. Coll. Dist.*, 654 F.Supp.2d 1073, 1102-03 (E.D. Cal. 2009) (finding temporal proximity insufficient to survive summary judgment where "there is no evidence that the decision-makers were aware of Plaintiff's [protected activity]"); *Higby v. Newby*, No. CV-03-0899-PHX-SMM, 2006 U.S. Dist. LEXIS 6958 (D. Ariz. Feb. 8, 2006) (finding temporal

proximity insufficient where discharge occurred more than nine months after her EEOC charge); *Mink v. Marion Cty. Juvenile Dep't*, No. 08-6298-AA, 2009 U.S. Dist. LEXIS 118690 (D. Or. Dec. 17, 2009) (finding timing insufficient when "two and a half years" passed between activity and adverse employment action.) Defendant's cited cases speak of months and years passing between activity and adverse action. They are not applicable to a case where the Plaintiff engaged in the protected activity and was terminated within 24 hours. As such, Plaintiff's inference based on the temporal proximity of their termination meets his burden of production to establish a *prima facie* case of retaliation.

      ii.     *Issue of Pretext.*

Defendant claims that summary judgment is appropriate because it has offered a non-retaliatory motive for Plaintiff's termination and Plaintiff cannot show any evidence that the refusal was pretextual. This argument misinterprets both when pretext applies and the evidence Plaintiff may use to prove a motivation is pretextual.

After the plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory explanation for the adverse employment action. *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001) (citing *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1997)); *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). If the employer gives a legitimate, non-retaliatory explanation, the burden shifts back to the plaintiff to show the explanation is merely a pretext for impermissible retaliation. *Id*. Very little direct evidence of discriminatory motive is required to establish pretext, but if circumstantial evidence is offered, it must be specific and substantial. *Winarto*, 274 F.3d at 1284 (citing *Godwin v. Hunt Wesson Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)); *Little v. Windermere Relocation, Inc.*, 265 F.3d 903, 915 (9th Cir. 2001)). While the employer's proffered non-retaliatory explanation defeats the "legally mandatory inference" of retaliatory discrimination, evidence already introduced to establish the *prima facie* case may still be considered to show pretext. *Burdine*, 450 U.S. at 255 & n.10 ("A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the

plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual.").

The Ninth Circuit has observed that, unless evidence of discrimination is "totally lacking," summary judgment is generally unsuitable in Title VII cases where the plaintiff has established a *prima facie* case because the question of an employer's true motive is an "elusive factual question." *Miller*, 797 F.2d at 732, 33 (*quoting Burdine*, 450 U.S. at 255 n.8). Very little evidence is needed to raise an issue of fact regarding motive; any indication of discriminatory motive including evidence of defendant's reaction to past protected activities or their past interactions with the plaintiff can suffice to raise an issue of fact. *Lowe*, *v. Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05 (1973)). "Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Yartzoff v. Thomas*, 809 F.2d 1371, 1377 (9th Cir. 1987) (quoting *Burdine*, 450 U.S. at 255 & n.10).

In this case both Plaintiff and Ms. Spinelli assert they made past reports to Amy Campbell regarding the Mr. Rahimzadeh's behavior and that she had refused to act on their complaints. Other evidence shows that Mr. Rahimzadeh had previously stated that Ms. Campbell would take his side and believe anything he said. Additional inferences in the Plaintiff's favor may be drawn from the fact Plaintiff had a positive work performance prior to reporting Mr. Rahimzadeh. It was only after his first report of Mr. Rahimzadeh to Ms. Campbell that he received negative performance reviews due to the pool maintenance. Even aside from Plaintiff's past interactions and reports to Amy Campbell, the temporal proximity and other events establishing the plaintiff's *prima facie* case can be considered evidence of pretext in this case. *Yartzoff* 809 F.2d at 1377; *Burdine*, 450 U.S. at 255 n.10. Considering this evidence with all inferences in favor of the nonmovant, Plaintiff has at least shown an issue of disputed fact over whether Defendant's requested drug test was pretextual and whether the true motive for his firing was retaliatory.

Defendant argues in response that "[P]laintiff will attempt to establish pretext by insisting he was never asked to submit to a drug test," and indeed, the parties hotly dispute whether the request for a drug test occurred. However, Defendant overestimates the significance and effect of asking Plaintiff to take a drug test. If Defendant asked Plaintiff to submit to a drug test and Plaintiff refused, all this would demonstrate is that Defendant has met its burden to show a legitimate non-retaliatory basis for terminating the Plaintiff. It does not demonstrate one way or another whether Defendant's supposedly legitimate request was pretextual. If no drug test had been requested, then Defendant would have failed to establish a non-retaliatory basis for terminating the Plaintiff and the legally mandatory presumption created by Plaintiff's *prima facie* case would still be in play. Thus, even if it is conclusively established that Plaintiff was asked to take a drug test, the only effect would be to shift the burden onto the Plaintiff to show pretext. It does not automatically prevent Plaintiff from proceeding.

For the above reasons, Defendant's Motion for Summary Judgement on Plaintiff's retaliation claim is denied.

### D. Plaintiff's State Law Claims under the AEPA

Both Plaintiff's state law claims for wrongful termination under the AEPA are properly resolved on summary judgment because they have been abandoned. *See* LRCiv 7.2(i). A party abandons claims by not raising them in opposition to a motion for summary judgment. *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008); *EEOC v. Walgreen Co.*, 2007 WL 926914, at *9 n.2 (D. Ariz. Mar. 26, 2007) ("We deem plaintiff's failure to respond to this argument a consent to the granting of summary judgment on this ground"). This applies even where a Defendant's original motion has not referenced the claim. *Schriro*, 514 F.3d at 892 ("…even though [defendant's] motion lacked any reference to the issue. We have previously held that a plaintiff has 'abandoned . . . claims by not raising them.'"). Because Plaintiff has failed to even mention his state law claims when contesting Defendants motion, Defendant's Motion for Summary Judgement on Plaintiff's AEPA claims is granted.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgement (Doc. 51.) is **granted in part and denied in part** as explained above.

Dated this 12th day of November, 2020.

_____
Honorable Susan M. Brnovich
United States District Judge